**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **GOLFCO SC HHL, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **CIVIL ACTION NO. 1:25-00179-JB-N** |
| | ) |
| **FEDERAL INSURANCE COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

**ORDER**

This matter comes before the Court on Defendant Federal Insurance Company's Motion

for Summary Judgment and Brief in Support thereof (Docs. 28 and 29), Plaintiff Golfco SC HHL,

LLC's Response in Opposition (Doc. 34), and Defendant's Reply to Plaintiff's Response. (Doc. 36).

After hearing argument of counsel on June 3, 2026, and after careful consideration of all the

briefing and evidence, Defendant's motion is GRANTED[1].

**I.    BACKGROUND**

This case arises from a fire and resulting damage to property located at the Rock Creek

Golf Club.  On March 1, 2024, Plaintiff Golfco SC HHL, LLC ("Golfco"), the owner of the Rock Creek

Golf Club, sustained a fire loss to a maintenance shed located on the property.  Golfco timely

reported the loss to one of its insurers, Federal Insurance Company ("Federal"), and claimed

damage to certain equipment located in the shed at the time of the fire (the "Claim") subject to

---

[1] Due to the straightforward nature of the arguments before the Court and after full review of the relevant filings and with the benefit of oral argument, the Court found the instant motion to be one of those rare instances where adopting a proposed order is appropriate.  The contents of this order were submitted as a proposed order, after a chance for review by opposing counsel with no objections filed.  The Court has made only minor non-substantive changes herein.

policy number 4547-27-37 EUC (the "Policy"). Federal assigned a claims handler and retained an independent adjusting firm (Engle Martin) to inspect the equipment and confirm the scope of the claimed damages.

It was determined and agreed by the parties that 40 separate pieces of equipment were damaged in the fire. Golfco provided an equipment replacement proposal for the agreed on damaged items. The proposal had a total in the amount of $784,991, which included a quote for the replacement cost of each separate item.

Federal's Policy with Golfco contains a Schedule of Contractors' Equipment that is made part of the Policy. Federal confirmed that the values of almost all the damaged equipment exceeded the "per item" limit of insurance for each item as set forth in the Schedule. As a result, Federal paid the "per item" limit relative to each piece of equipment listed on the Schedule. For the remaining damaged items for which the amount did not exceed the scheduled limits, Federal paid the replacement cost values based on a market analysis performed by its independent adjuster. Federal paid $580,821.48 (after application of the $1,000 deductible) for damage to Golfco's scheduled contractors' equipment. Federal also made supplemental payments of $17,116.67 for non-scheduled contractors' equipment, $10,500 for debris removal, and $12,574.72 for reimbursement of rented equipment through September 2024. In all, Federal paid more than $620,000 to Golfco.

Golfco, however, has demanded the full amount of its equipment replacement proposal, even though Federal paid the "per item" limit relative to the damaged items. Golfco filed a Complaint against Federal in the Circuit Court, Baldwin County, Alabama. Federal timely removed the action to this Court. Golfco's Complaint seeks damages for breach of contract, as

well as for "normal" and "abnormal" bad faith.  Golfco alleges that Federal owes the entire replacement value amount of Golfco's replacement proposal and claims that more than $200,000 in additional money should have been paid by Federal.

## II.    THE FEDERAL POLICY

The damaged property in question is insured by Federal Insurance Company under policy number 4547-27-37 EUC.  The Policy provided commercial inland marine insurance coverage, including scheduled contractors' equipment coverage.  The Policy covers direct physical loss or damage to the contractors' equipment, with the coverage "not to exceed the applicable Limit of Insurance for Scheduled Contractors' Equipment shown in the Declarations."  The Policy has an overall limit of insurance in the amount of $1,269,832.  The Limit of Insurance shown in the Policy Declarations states that the limits for each scheduled item are per the Schedule made a part of the policy.  The parties agree that the Schedule of Equipment is a part of the insurance contract.  In addition, the policy states that the loss payment for any loss to the covered equipment is made on a replacement cost or actual cash value basis, depending upon the nature of the equipment in question.  Loss payments are made "subject to the Limit of Insurance for Contractors' Equipment shown in the Declarations."

## III.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "The mere existence of some

evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250 (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th

4

Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response . . . must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

## IV.    BREACH OF CONTRACT

Golfco's main argument is that summary judgment should be denied due to an ambiguity in the Federal contract. Golfco asserts that the policy language is ambiguous because the Policy states that damaged equipment will be valued on a replacement cost basis and that such language entitles Golfco to recover the full cost to replace covered, damaged equipment. Golfco asserts that it is contradictory – and therefore ambiguous – for the Policy to contain language that values damaged property on a replacement cost basis while at the same time to have each piece of equipment have a separate scheduled limit that is below the cost to replace the damaged items in question. However, such an argument confuses the terms "value" and "limit" in the Policy and ignores clear language in the Policy itself.

To establish a breach of contract, a plaintiff must meet its burden of proof as to the existence of a valid and binding contract between the parties to the action, plaintiff's own performance under the contract, the defendant's nonperformance, and damages. *See, e.g., Ex parte Alfa Mut. Ins. Co.*, 799 So. 2d 957, 962 (Ala. 2001). It is undisputed that the insurance policy is a valid contract.

The "court must enforce the insurance policy as written if the terms are unambiguous." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005).   The Alabama Supreme Court has enforced the principle that the mere fact that parties offer different interpretations of the same policy language does not, standing alone, render it ambiguous. *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So.2d 687, 692 (Ala. 2001) An ambiguity arises only "when more than one interpretation may fairly be given to a policy provision." *Id.*

"Where there is no ambiguity in the terms of an insurance contract, the language must be enforced as written, and courts cannot defeat express provisions in a policy . . . by making a new contract for the parties[.]" *Porterfield v. Audubon Indem. Co.,* 856 So. 2d 789, 806 (Ala. 2002). Crucially, courts must reject "strained or twisted reasoning" as a basis for finding ambiguity. Id.; *Kelley v. Royal Globe Ins. Co.,* 349 So.2d 561 (Ala.1977). Whether an ambiguity exists is a question of law for the court to decide, not a fact question for the jury. *National Trust Insurance Company v. Westover Planting Company,* 705 F.Supp.3d 1327, 1331 (M.D. Ala. 2023); *Safeway Ins. Co. of Alabama, Inc. v. Herrera,* 912 So.2d 1140 (2005).

When an insurance company determines the amount to be paid (i.e., the "loss payment") the company must follow the Policy language concerning whether the damaged property must be paid on a replacement cost basis, or an actual cash value basis. However, regardless of the

valuation method used, the amount owed by the insurer is subject to a maximum payment of the limits set forth in the Policy.

Here, the evidence is clear that the Federal Policy contains a separate schedule of contractors' equipment. Each item in the schedule (which, as noted, is part of the insurance contract) contains a separate, individual maximum limit to be paid for each piece of equipment. This is clearly spelled out in the Policy under the section entitled "Limit of Insurance" which states: "For Scheduled Contractors' Equipment . . . we will not pay more than the Limit of Insurance for each item which is lost or damaged." The section further states "[t]he limit of insurance is shown opposite the item on the Schedule of Contractors' Equipment."

Golfco is correct that for damaged equipment, Federal must <u>value</u> the damage on a replacement cost basis and pay accordingly. However, that payment, per the plain language of the Policy, is subject to the limit for each item as set forth in the Schedule of Contractors' Equipment. The undisputed evidence presented by Federal shows that it did, in fact, pay what was owed for each damaged item per the terms of the Policy.

Having found the Policy contains clear and unambiguous language concerning loss payment and having found that the undisputed evidence proves Federal paid the amounts owed per the terms of the Policy, the claim for breach of contract is due to be dismissed.

### V.    BAD FAITH

Golfco also asserts claims for "normal and "abnormal" bad faith. The Alabama Supreme Court recognizes the tort of bad faith "where there is either '(1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal.'" *State Farm Fire & Cas. Co v. Brechbill*, 144 So. 3d

7

248, 257 (Ala. 2013) (quoting *Chavers v. National Sec. Fire & Cas. Co.,* 405 So. 2d 1, 7 (Ala. 1981));

*see also, Cole v. Owners Ins. Co.*, 326 F. Supp. 3d 1307, 1329 (N.D. Ala. 2018).  Alabama courts

refer to the first method of proof as "bad faith refusal to pay," "normal" bad faith, or "ordinary"

bad faith.   The second method is known as "abnormal" bad faith.  *Brechbill*, 144 So. 3d at 258

(quoting *Employees' Benefit Ass'n v. Grissett*, 732 So.2d 968, 976 (Ala. 1998)).

As noted above, Golfco cannot prove that the contract in question was breached by

Federal. *Johnson v. State Farm Fire & Cas. Co.,* 2013 WL 4607548, Case No. 12-00534, *16 (S.D.

Ala. Aug. 29, 2013) (stating that there is no bad faith where no breach of contract is established).

However, even if there remains a question as to whether a breach occurred, it cannot be argued

in any capacity that Federal did not have an arguable basis for the actions it took on this claim.

"Alabama law is clear . . .  regardless of the imperfections of [an insurer's] investigation, the

existence of a debatable reason for denying the claim at the time the claim was denied defeats a

bad faith failure to pay the claim." *Weaver v. Allstate Insurance Co.,* 574 So. 2d 771, 775 (Ala.

1990) (quoting *State Farm Fire & Cas. Co. v. Balmer*, 891 F. 2d 874, 877 (11th Cir. 1990); *see also*

*National Savings Life Ins. Co. v. Dutton,* 419 So. 2d 1357, 1362 (Ala. 1982) ("[w]hether an

insurance company is justified in denying a claim under a policy must be judged by what was

before it at the time the decision is made.").  In fact, Golfco's counsel conceded as much during

oral argument that if the Court finds no ambiguity in the Policy, the bad faith claim must fail.

Further, there is no evidence to support a claim for "abnormal" bad faith.  In the

"abnormal" bad faith situation, Golfco must provide evidence of (1) intentional or reckless failure

to investigate a claim, (2) intentional or reckless failure to properly subject a claim to a cognitive

evaluation or review, (3) the manufacture of a debatable reason to deny a claim, or (4) reliance

on an ambiguous portion of a policy as a lawful basis for denying a claim. *See White v. State Farm Fire & Cas. Co.*, 953 So. 2d 340, 349 (Ala. 2006) (*citing State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 206 (Ala. 1999)).  The record before the Court indicates no such evidence.  It is undisputed Federal timely adjusted and promptly paid the claim consistent with the terms of the Policy.  As such, Federal is entitled to summary judgment as a matter of law on Plaintiff's bad faith claims for both "normal" and "abnormal" bad faith.

## VI.    CONCLUSION

Accordingly, for the reasons set forth above, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (Doc. 28) is **GRANTED.**  Federal is entitled to Judgment as a matter of law on all Counts asserted by Golfco.

**DONE and ORDERED** this 8th day of July, 2026.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE